ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/8/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALLE PROCESSING CORP.,

                              Plaintiff,

          - against -

MSC MEDITERRANEAN SHIPPING COMPANY
(USA), INC.,

                              Defendant.

24 Civ. 5604 (LLS)

OPINION & ORDER

## Introduction

Plaintiff Alle Processing Corp. ("APC") hired defendant Mediterranean Shipping Company (USA), Inc. ("MSC") to transport a shipment of frozen boneless beef (the "Cargo"). During the voyage, the carrying vessel lost power, causing the Cargo to spoil. APC disposed of the damaged Cargo and sued MSC for failure to deliver the shipment in good order and condition, pursuant to the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701, et seq.

MSC concedes liability for the damaged Cargo but moves for summary judgment as to the amount of damages owed to APC. (Dkt. No. 25). For the reasons explained below, MSC's motion for summary judgment is denied.

- 1 -

## Background

The following facts are taken from the parties' Local Civil Rule 56.1 Statements. See MSC's Rule 56.1 Statement of Material Facts ("SOMF") (Dkt. No. 41); APC's Rule 56.1 Counterstatement of Material Facts ("COMF") (Dkt. No. 46).

### I.    The Voyage

APC hired MSC to carry the Cargo from the Port of Montevideo, Uruguay, to the Port of New York. SOMF ¶ 2. In Uruguay, the shipper, Frigorifico Las Piedras S.A. ("Frigorifico"), loaded the Cargo into two containers. Id. ¶ 4. One container held 1,080 cartons of beef palletized onto 29 pallets, and the other held 894 cartons of beef palletized onto 34 pallets. Id. ¶¶ 4, 15-16. Frigorifico then loaded the containers onto the M/V MSC Dardanelles. Id. ¶¶ 4, 7. MSC chartered this vessel; it does not own the ship or employ its crew. COMF ¶ 18.

At some point during the voyage, the MSC Dardanelles lost power, damaging the refrigerated Cargo. Id. ¶ 24. MSC has been unable to determine what caused the incident because "the vessel's Owner has not been forthcoming about the cause of the power loss." Def. Br. at 3 (Dkt. No. 42).

The shipping containers were discharged in New York and delivered to a warehouse operated by Lineage Logistics. SOMF ¶ 11. APC and MSC each hired surveyors to inspect the damaged

- 2 -

Cargo, and both surveyors issued reports documenting the Cargo's condition. Id. ¶ 14; Azevedo Decl., exs. D, E (Dkt. No. 38).

## II.  The Bills of Lading

MSC issued two bills of lading, which serve as contracts governing the Cargo's carriage. SOMF ¶ 8; Azevedo Decl., exs. B, C (Dkt. No. 38) (hereinafter "MSC BOLs"). The front of each bill lists stowage specifications and describes the Cargo as follows:

See website for large version of the reverse | Ver página Web para términos y condiciones | Смотрите веб-сайт для ознакомления с условиями и положениями | 正中版反面详见网站 | www.msc.com

**m sc MEDITERRANEAN SHIPPING COMPANY S.A.**
12-14, chemin Rieu, 1208 GENEVA, Switzerland
Website : www.msc.com
SCAC Code: MSCU

**BILL OF LADING No.    MEDUM0417169**
RIDER PAGE
Page 1 of 1

CONTINUATION OF PARTICULARS FURNISHED BY THE SHIPPER - NOT CHECKED BY CARRIER - CARRIER NOT RESPONSIBLE (see Clause 14)

| Container Numbers, Seal Numbers and Marks | Description of Packages and Goods (Continued on further Bill of Lading Rider page(s), if applicable) | Gross Cargo Weight | Measurement |
|---|---|---|---|
| | FROZEN BONELESS BEEF<br>NCM: 0202.30.00.50<br><br>TOTAL CARTONS: 894<br>TOTAL KGS NET: 20.405,00<br>TOTAL KGS GROSS: 22.260,00<br>SHIPPER SEAL: 3157807<br><br>STOWED IN REFRIGERATED SPACE AT MINUS 18 DEGREES CELSIUS<br>02 TWC - TREATED AND CERTIFIED WOOD IN CONTAINER<br><br>FREIGHT COLLECT<br>SHIPPED ON BOARD<br>MGAP SEAL: UYMVD160674<br><br>MARKS: LAS PIEDRAS<br>SHIPPING MARKS:<br>LP201770 | | |
| MEDU9013758/40'HR/4300<br>Seal:EU23757026 | 894 CARTONS<br><br>Temp. -18C | 22260.000 kg | 61.0000 m3 |

See website for large version of the reverse | Ver página Web para términos y condiciones | Смотрите веб-сайт для ознакомления с условиями и положениями | 正中版反面详见网站 | www.msc.com

**m sc MEDITERRANEAN SHIPPING COMPANY S.A.**
12-14, chemin Rieu, 1208 GENEVA, Switzerland
Website : www.msc.com
SCAC Code: MSCU

**BILL OF LADING No.    MEDUM0417177**
RIDER PAGE
Page 1 of 1

CONTINUATION OF PARTICULARS FURNISHED BY THE SHIPPER - NOT CHECKED BY CARRIER - CARRIER NOT RESPONSIBLE (see Clause 14)

| Container Numbers, Seal Numbers and Marks | Description of Packages and Goods (Continued on further Bill of Lading Rider page(s), if applicable) | Gross Cargo Weight | Measurement |
|---|---|---|---|
| | FROZEN BONELESS BEEF<br>NCM: 0202.30.00.50<br><br>TOTAL CARTONS: 1.080<br>TOTAL KGS NET: 26.404,00<br>TOTAL KGS GROSS: 28.410,00<br>SHIPPER SEAL: 3157854<br><br>STOWED IN REFRIGERATED SPACE AT MINUS 18 DEGREES CELSIUS<br>02 TWC - TREATED AND CERTIFIED WOOD IN CONTAINER<br><br>FREIGHT COLLECT<br>SHIPPED ON BOARD<br>MGAP SEAL: UYMVD160672<br><br>MARKS: LAS PIEDRAS<br>SHIPPING MARKS:<br>LP20177N | | |
| TRIU8671287/40'HR/4300<br>Seal:EU23757063 | 1080 CARTONS<br><br>Temp. -18C | 28410.000 kg | 61.0000 m3 |

The reverse side of each bill contains MSC's standard terms and conditions. The terms include the following provisions:

### 1. Definitions

Merchant: includes the Shipper, Consignee, holder of this Bill of Lading, the receiver of the Goods and any Person owning, entitled to or claiming the possession of the Goods or of this Bill of Lading or anyone acting on behalf of this Person.

### 6. U.S. Trade Clause

6.2 For limitation purposes under the GOGSA [sic; COGSA], it is agreed that the meaning of the word "package" shall be any palletised and/or unitised assemblage of cartons which has been palletised and/or unitised for the convenience of the Merchant, regardless of whether said pallet or unit is disclosed on the front hereof.

### 7. Compensation and Liability Provisions

7.2.2 Where COGSA applies by virtue of clause 6, neither the Carrier nor the Vessel shall in any event be or become liable in an amount exceeding US $500 per package or per customary freight unit.

Azevedo Decl., ex. A (Dkt. No. 38) (hereinafter "MSC BOL Terms").

### III. Damages Dispute

Because MSC concedes liability, the sole issue on summary judgment is the amount of damages APC may recover.

The parties agree that COGSA governs the dispute and that the bills of lading incorporate COGSA's $500 per package limitation for lost or damaged cargo. See Def. Br. at 5 (Dkt. No. 42); P. Br. at 5 (Dkt. No. 43); MSC BOL Terms, cl. 7.2.2. However, the parties dispute how to define a "package" under

- 4 -

COGSA. MSC contends that a package is a pallet, and that its liability is therefore $31,500 (63 pallets at $500 each). Def. Br. at 4 (Dkt. No. 42). APC contends that the bills' definition of "package" is ambiguous because it references both cartons and pallets. P. Br. at 16 (Dkt. No. 43). It also argues MSC cannot demonstrate the Cargo was palletized "for the convenience of the Merchant," as required by Clause 6.2 on the bills of lading. Id. APC asserts that these two matters present genuine disputes of material fact that preclude summary judgment. Id.

## Legal Standard

### I.   Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material if, based on the substantive law, it "might affect the outcome of the suit under the governing law," and it is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

At summary judgment, the Court's task is to "discern[] whether there are any genuine issues of material fact to be tried, not to decid[e] them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

- 5 -

"Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

## II.    COGSA

The Carriage of Goods by Sea Act ("COGSA") establishes the rights and liabilities of maritime carriers and shippers. See 46 U.S.C. App. §§ 1300-1315. Section 1304(5) of COGSA imposes a $500 limitation of liability for any lost or damaged packages:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

46 U.S.C. App. § 1304(5). "[T]he treatment of a summary judgment motion under COGSA is no different from the way similar motions are dealt with in any other litigation." Transatlantic Marine Claims Agency, Inc. v. M/V OOCL Inspiration, 137 F.3d 94, 101 (2d Cir. 1998).

- 6 -

## Discussion

### I.    COGSA's Liability Limitation

This Court is faced with the "troublesome conundrum: When is a package not a package?" Allied Int'l Am. Eagle Trading Corp. v. S. S. Yang Ming, 672 F.2d 1055, 1057 (2d Cir. 1982) (internal quotation marks and citation omitted).

"The question of what constitutes a COGSA package, a question we frequently confront, is largely and in the first instance a matter of contract interpretation." Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro, 775 F.2d 476, 485 (2d Cir. 1985). "The most obvious place for us to begin our search for the intent of the contracting parties is, of course, the bill of lading." Id. If the parties "unambiguously identif[y]" the relevant package in the bill of lading, the Court will "adopt [that] unit of packaging." Seguros Illimani S.A. v. M/V Popi P, 929 F.2d 89, 94 (2d Cir. 1991). However, "[w]e bear in mind that bills of lading are contracts of adhesion and, as such, are strictly construed against the carrier." Companhia, 775 F.2d at 482.

### A. Bills of Lading

The "Description of Packages and Goods" heading on the front of a bill of lading generally identifies the intended COGSA package unless it is "plainly contradicted by contrary evidence of the parties' intent." Seguros, 929 F.2d at 94. The

- 7 -

bills at issue in this dispute include a "Description of Packages and Goods" heading, under which the text reads "894 cartons," "Total cartons: 894," "1,080 cartons," and "Total cartons: 1080." MSC BOL at 1. This section does not reference pallets, and MSC concedes pallets are not mentioned anywhere else on the face of the bills of lading. See Flood Decl., ex. E at 30:9-14 (hereinafter "Azevedo Transcript") (Dkt. No. 37). The front of the bills therefore suggests that the parties intended a carton to be the operative COGSA package.

However, the reverse side of the bills contains language that may constitute "contrary evidence of the parties' intent." Seguros, 929 F.2d at 94. The bills' boilerplate terms define a COGSA package not as a carton but as "any palletised and/or unitized assemblage of cartons." MSC BOL Terms, cl. 6.2. This definition conflicts with the description of packages as cartons on the front of the bills and introduces ambiguity about the parties' intended definition of "package." "[W]here contract language is ambiguous, the differing interpretations of the contract present a triable issue of fact and summary judgment is inappropriate." Fireman's Fund Ins. Co. v. Yang Ming Marine Transp. Corp., 2002 WL 31040340, at *2 (S.D.N.Y. Sept. 12, 2002).

MSC claims that the bills' faces do not reference pallets because federal regulation requires bills of lading to identify

- 8 -

cargo by "the quantity of the lowest external packaging unit." 19 C.F.R. § 4.7a. Here, the lowest external packaging unit is a carton, not a pallet. Although MSC raises this federal regulatory argument for the first time in its reply brief, the Court exercises its discretion to consider the merits. In re Various Grand Jury Subpoenas, 235 F. Supp. 3d 472 (S.D.N.Y. 2017).

MSC's reliance on Section 4.7a raises factual questions about intent that cannot be resolved summarily. It is possible that the bills describe the Cargo as cartons solely because federal regulation requires it. It is equally possible that the parties intended cartons to be the COGSA package and that this description also complied with federal regulation. The party best able to speak to the discrepancy is the shipper who filled out the bills. However, neither party has "provided evidence regarding the shipper's contemporaneous understanding of the numbers it was providing for the Number of Packages column and their importance to the question of potential damage liability." HDI Glob. Ins. Co. v. Kuehne + Nagel, Inc., 2024 WL 4188345, at *3 (S.D.N.Y. Sept. 13, 2024) (denying summary judgment because 19 C.F.R. § 4.7a raised factual questions). Because bills must be strictly construed against the carrier, MSC's argument regarding Section 4.7a, without additional evidence of the parties' intent, does not resolve the bills' ambiguity.

- 9 -

## B. Evidence Outside of the Bills of Lading

If a bill's text is ambiguous, the Court may consider extrinsic evidence to determine the parties' intent. See Seguros, 929 F.2d at 94. Here, the parties provided surveyors' reports of the damaged Cargo, a house bill of lading prepared for the shipment, and a warehouse receiving tally of the Cargo.

The surveyors' reports do not resolve the ambiguity because they refer to the Cargo as both cartons and pallets. One report inventories the Cargo by carton, such as "139 cartons" of neck meat or "61 cartons" of minute roast. Azevedo Decl., ex. D, at 16 (Dkt. No. 38). However, it also describes the Cargo as "palletized cartons," "individual cartons […] stowed on wooden pallets," and "pallets of cartons." Id. at 14, 15, 17. The second report similarly quantifies the Cargo in cartons and uses cartons in its description of the damage, for example, "[w]e noted blood stains and/or frozen pooled blood on several cartons, as well as light to moderate crushing/wrinkling of the cartons." Azevedo Decl., ex. E at 4 (Dkt. No. 38). Yet that report also notes that the cartons were stacked on pallets. Id. at 3.

The house bill of lading issued by Leader Cargo describes the packages as cartons, but it also notes that the container held "treated and certified wood." Azevedo Decl., ex. H at 1 (Dkt. No. 38). MSC asserts this is a reference to pallets;

- 10 -

however, MSC's corporate representative was unable to explain the significance of this language when asked about it at her deposition. Azevedo Transcript at 27:16-22 ("That was [sic] the shipper provided. So I wouldn't have much information about it."). Thus, the house bill of lading's description slightly favors an interpretation that cartons are the operative package, but it is not conclusive.

Finally, Lineage Logistics' warehouse receiving tally likewise does not resolve the ambiguity, as it refers to the Cargo as pallets and cartons. Azevedo Decl., ex. I (Dkt. No. 38). The bottom of the receiving tally reads "Pallet Wrapped/QTY: 24 Pallets," while the "Quantity Expected" column on the document describes the Cargo in number of cartons. Id.

### C. For the Convenience of the Merchant

The parties' intended definition of "package" remains ambiguous. However, even if the Court were to find a pallet is the COGSA package, MSC must also demonstrate that the Cargo was palletized "for the convenience of the Merchant[1]" to invoke the $500 per package limitation in Clause 6.2. MSC BOL Terms, cl. 6.2; see also HDI Glob. Ins. Co. v. Kuehne + Nagel, Inc., 2025 WL 444992, at *11 (S.D.N.Y. Feb. 10, 2025), aff'd, 2026 WL

---

[1] The bills' terms define "Merchant" as "the Shipper, Consignee, holder of this Bill of Lading, the receiver of the Goods and any Person owning, entitled to or claiming the possession of the Goods or of this Bill of Lading or anyone acting on behalf of this Person." MSC BOL Terms, cl. 1.

569833 (2d Cir. Mar. 2, 2026) (holding that language identical to Clause 6.2 was enforceable only if the palletization occurred for the Merchant's convenience).

The parties dispute who requested the palletization. MSC's corporate representative testified that "how the cargo is packed is the Merchant's decision." Azevedo Transcript at 50:20-25. However, she later acknowledged MSC did not consult with APC or the shipper regarding why the Cargo was palletized. Id. at 51:6-25, 52:19-25. She also conceded "I don't know why the goods were palletized" and confirmed that MSC "really has no insight as to why goods are packaged in a particular way." Id. at 52:11-12, 53:10-17.

Further muddying the waters, MSC provided a declaration from a Lineage manager stating that "[t]he cartons have to be palletized in order to facilitate Lineage's handling of the shipments at our warehouse." Ortega Decl. at 1 (Dkt. No. 39). But this declaration did not contain any foundational details, such as documentation of Lineage's internal procedures or operational requirements. The parties also appear to dispute whether Lineage is a Merchant under the bills' definition.

Finally, APC submitted a declaration from its Vice President contradicting MSC's evidence. Ginsberg Decl. (Dkt. No. 45). The Vice President asserted that APC has never required its cargo to be palletized. Id. at 3. He explained that palletizing

cargo is impractical and inefficient because the receiving warehouse must individually inspect and inventory each carton, rendering the pallets unnecessary. Id. at 2-3. He also stated that shipping containers can hold more cartons when they are unpalletized, which reduces APC's container costs. Id.

The parties' conflicting declarations and testimony raise genuine disputes of material fact, the resolution of which would require this Court to make impermissible credibility determinations and choose between competing versions of events. These functions cannot be performed on summary judgment. Fischl, 128 F.3d at 55.

### D. Recent Caselaw

MSC cites three cases that interpreted language identical to Clause 6.2 and found a pallet to be a COGSA package. HDI Glob. Ins. Co. v. Kuehne + Nagel, Inc., 2025 WL 444992 (S.D.N.Y. Feb. 10, 2025), aff'd, 2026 WL 569833 (2d Cir. Mar. 2, 2026); Fed. Ins. Co. v. MSC Mediterranean Shipping Co. S.A., 784 F. Supp. 3d 570 (S.D.N.Y. 2025); Hercules OEM Grp. v. Zim Integrated Shipping Servs. Ltd., 2023 WL 6317950 (S.D.N.Y. Sept. 28, 2023). These cases do not alter the Court's conclusion. One of the cases did not address the "for the convenience of the Merchant" language. Fed. Ins. Co., 784 F. Supp. 3d at 570. In another, the plaintiff conceded that the palletization was for its own convenience. Hercules OEM Grp., 2023 WL 6317950 at *11. The

court in the third case denied summary judgment precisely because the bills of lading referenced both cartons and pallets, raising genuine questions regarding the parties' intent. HDI Global Insurance Co., 2025 WL 444992, at *1. In fact, that court determined that palletization occurred for the convenience of the Merchant only after evaluating evidence presented at a bench trial. Id. at *3, *9. The foregoing cases do not compel the entry of summary judgment because they turned on distinct factual records and concessions not made in the present dispute.

## II.  Deviation Doctrine

APC contends that the ship's power failure constitutes an unreasonable deviation from the bills' terms, which precludes enforcement of COGSA's $500 limitation. This argument is unavailing because the Second Circuit recognizes only two types of unreasonable deviation: geographic deviation and unauthorized on-deck stowage. Sedco, Inc. v. S.S. Strathewe, 800 F.2d 27, 31 (2d Cir. 1986). APC asserts neither theory. Rather, it contends that the improper stowage of perishable cargo deviated unreasonably from the parties' agreed contract terms, depriving APC of the protections for which it bargained. This argument fails because "mere negligence, lack of due diligence, or a failure to properly handle, stow, care, or deliver cargo, never has constituted deviation," and such conduct cannot "hav[e] the effect of voiding either a contractual or statutory limitation

- 14 -

of liability." Id. at 32; see also Jones v. the Flying Clipper, 116 F. Supp. 386, 389 (S.D.N.Y. 1953) ("But mere negligence with regard to stowage or handling of the cargo has never constituted deviation.").

## Conclusion

The Court cannot resolve how to define a COGSA package and whether the Cargo was palletized for the convenience of the Merchant on the present record. MSC's motion for summary judgment is therefore denied.

So ordered.

Dated: New York, New York

April 8, 2026

_Louis L. Stanton_

LOUIS L. STANTON

U.S.D.J.